SACKETT L. DURYEE, PLAINTIFF, *v.* THOMAS BOTSFORD
DEFENDANT.

*Execution — right to issue it after the death of the plaintiff — right of his assignee
to issue it — who may move to vacate it, if irregularly issued — Right to attack a
conveyance as fraudulent as to creditors.*

June 15, 1860, the plaintiff's attorney, issued an execution upon a judgment
recovered on that day against the defendant, which was on August 5, 1860,
returned unsatisfied. On April 16, 1877, the same attorney, without any
application to the court, issued a second execution upon the judgment,
indorsed by him as the plaintiff's attorney, under which certain premises
belonging to the defendant were, on June 8, 1877, sold, and thereafter, and in
September, 1878, conveyed to the purchasers. The plaintiff died in February,
1870, and letters of administration were duly issued upon his estate. Prior to
his death he had assigned the judgment to his attorney as security for certain
costs owing to him.

Upon an application, made by persons who had purchased the premises from the
defendant shortly before the issuing of the second execution, to vacate and set
it aside, together with all the proceedings had thereunder:

*Held,* that the execution was irregularily issued and that the application should
be granted.

That the question as to whether or not the conveyance to the applicants was
made with the intent to defraud the creditors of the judgment debtor could
not be determined upon this application.

APPEAL from an order made at Special Term denying a motion
to set aside an execution issued in this case and all the proceedings
had under it.

*William J. Groo,* for the appellant.

*Benjamin Low,* for the respondent.

BRADY, J.:

It appears that on the 15th of June, 1860, the plaintiff recovered
a judgment against the defendant for the sum of ninety-seven dollars
and fourteen cents. On that day, namely, June 15, 1860, the plain-
tiff's attorney, John Henry Hull, issued an execution, which was
returned *nulla bona* on the 5th of August, 1860. On the 16th of

April, 1877, the same attorney issued a second execution, indorsing that process with his own name, but as the plaintiff's attorney.

The plaintiff was dead at the time this second execution was issued, having died in February, 1870, and John H. Bird and Julia B. Duryee were appointed administrator and administratrix of his personal estate by the surrogate of this county.

The execution lastly issued was not founded upon any authority from any court or judge, no application for leave to issue it having been made. It further appears that the plaintiff, before his death and after the recovery of the judgment, transferred to John Henry Hull his right, title and interest in and to the judgment, as security for certain costs owing to the latter. It appears, also, that on the 8th of June, 1877, the sheriff of Ulster county sold certain premises described in the papers upon which this application was made, and that in September, 1878, she received in due form from him a deed for the purchase.

The question presented on this state of facts is, whether the execution was authorized and valid. The objection that no application was made for leave to issue the second execution is not good, because it has been held that an execution may be issued after the expiration of five years without leave, provided a former execution has been issued and returned within five years from the docketing of the judgment. (Sec. 284 of old Code; *Wilgus* v. *Bloodgood*, 33 How. Pr., 289.) The Code prevailing at the time the second execution was issued, by amendment in 1866 to section 283, declared that in the case of the death of a person in whose favor a judgment had been given or might be given, his personal representatives duly appointed might, at any time within five years after the entry of the judgment, proceed to enforce the same.

The present Code of Civil Procedure (§ 1376) has the same provision, and in addition thereto gives authority to the assignee of the judgment, if it has been assigned, to issue the execution, declaring, however, that that process must be indorsed with the name and residence of the person issuing the same.

Under the Code, prior to the amendment of 1866 (*supra*), if a plaintiff died after judgment in his favor and before execution issued, no such process could be employed until proceedings in the nature of a *scire facias* were adopted, under section 428, by his

personal representatives. (4 Wait's Pr., 7, and cases cited.) An assignee of a judgment, the judgment creditor having died, was then required to apply for leave to issue an execution in his favor. This was the rule, it seems, if the assignor were living, prior to the provisions in the Code of Civil Procedure (*supra; Betts* v. *Garr*, 26 N. Y., 383; *Bellinger* v. *Ford*, 21 Barb., 311.; S. C., 14 id., 250); and is the more commendable when the judgment creditor and assignor is dead, as a protection to his estate as well as to the judgment debtor.

It will have been perceived that the execution issued in this case, and which it is now sought to set aside, appears to have been issued on behalf of the plaintiff, and not of an assignee, because it is indorsed "John Henry Hull, plaintiff's attorney," and is in form, therefore, an execution issued in favor of the plaintiff, and not one issued by the assignee or anybody on his behalf. We do not see, therefore, how, under such circumstances, the execution can be maintained.

The administrator and administratrix upon whom the papers were served in this matter are silent, whether because they desire that the execution shall be set aside or because they are cognizant of the fact that the judgment was assigned, as alleged, is a mere matter of inference. Mr. Hull having become the assignee and having the title to the judgment, if he had issued it as an assignee, and if it appeared after proper investigation that his title was good, it may be that there would be no well founded reason for setting it aside, notwithstanding the rules to which reference has been made, the design of legislation affecting such subjects and the object of the courts now being to avoid circuity of action or proceeding. Mr. Hull appears to have proceeded as the plaintiff's attorney only, however, long after the plaintiff's decease and long after his authority as an attorney, from aught that appears in this case, had ceased to exist.

Without invading a well settled practice and, indeed, without enlarging the statute so as to embrace the assignee of a judgment, it would seem to be impossible to sustain the execution. It must therefore be declared to be void.

It is not thought that the parties applying to set aside the execution are destitute of interest in the subject. They claim under a

deed executed by the judgment debtor before the second exec
was issued, and this is not an application in which the cour
consider whether that deed was void because made with an int
tion to defraud creditors; that is a question which requires a grave
mode of investigation and determination.

For these reasons we think the order appealed from must be
reversed, with costs.

DAVIS, P. J., concurred.

Present — DAVIS, P. J., and BRADY, J.

Order reversed, with costs.